# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WILLIAM ALVIN SMITH, | ) | |
| | ) | 3:13-CV-00459-MMD (VPC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | October 29, 2014 |
| | ) | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for reversal or remand (#24),[1] defendant's reply (#29) and cross-motion to affirm (#28), and plaintiff's reply to the same (#30).  Also before the court is plaintiff's motion for default judgment (#25), defendant's opposition (#26), and plaintiff's response (#27).  For the reasons set forth herein, the court recommends that plaintiff's motions for default judgment and remand to the Commissioner be denied, and defendant's cross-motion to affirm be granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 3, 2009, William Alvin Smith ("plaintiff") filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act.  (Administrative Record ("AR") 17).  Days later, on December 9, plaintiff filed a claim for Supplemental Security Income ("SSI") payments under Title XVI of the Act.  (AR 17).  In both applications, plaintiff alleged that

---

[1] Refers to the court's docket number.

he became disabled on September 8, 2009.  (AR 17).  Plaintiff's applications for benefits were denied initially on September 16, 2010, and again upon consideration on January 4, 2011.  (AR 17).

On January 31, 2012, plaintiff and counsel appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlison.  (AR 17, 33-71).  The ALJ issued a written decision on February 16, 2012, finding that plaintiff had not been disabled at any time between September 8, 2009 and the decision date.  (AR 17).  Plaintiff appealed, and the Appeals Council denied review.  (AR 1-3).  Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

On August 26, 2013, plaintiff filed a complaint for judicial review.  (#1).  The court issued a scheduling order on January 29, 2013 that instructed plaintiff, who proceeds in this action *pro se*, to file within thirty days a motion to remand for new evidence or a motion for remand or reversal.  (#16 at 2-3).  The order also provided defendant thirty days from plaintiff's filing date in which to oppose the motion and file a cross-motion to affirm.  (#16 at 3).  On February 19, 2014, the court extended plaintiff's filing deadline by sixty days, in accordance with a stipulation between plaintiff and defendant.  As a result, plaintiff's motion for remand was due on May 2, 2014, and defendant's opposition and cross-motion was due by June 20, 2014.  (#20).

Four days past the May 2, 2014 deadline, plaintiff requested an additional ninety day extension.  (#22).  The court granted plaintiff's motion because defendant did not oppose.  (#23).  On July 28, 2014, plaintiff filed his motion for remand or reversal (#24), followed by a motion for default judgment against defendant on August 15, 2014.  (#25).  Defendant opposed the default judgment motion on August 20, 2014 (#27), and filed on August 25. 2014, its opposition to plaintiff's motion for remand (#24).  Defendant also filed a cross-motion to affirm (#28) at that time.

Plaintiff moves for default judgment because defendant allegedly did not timely file her opposition and cross-motion. Citing Local Rule 7-2(d), plaintiff argues that defendant's "failure to

timely respond to [p]laintiff's motion" should cause 7-2(d) . . . " to be construed as defendant's consent to plaintiff's motion for remand or reversal.  (#25 at 2).  Defendant opposes on the basis that the court's scheduling order (#16) allowed thirty days from plaintiff's July 28, 2014 filing in which she could oppose and file a cross-motion, and thus her deadline was August 27, 2014.  (#26 at 1-2).

As the court understands the motion for remand or reversal, plaintiff argues that the ALJ exhibited improper bias toward him on the basis of his obesity, as evidenced by the ALJ's description of him as "obese" several times in the decision.  (#24 at 2).  Plaintiff also argues that the ALJ's findings are contradictory, in that she found "severe" some of his conditions, but not others. (#24 at 3).  Plaintiff further contends that the ALJ improperly discounted the opinion of his treating physician.  (#24 at 9).  Finally, plaintiff appears to challenge the ALJ's finding of nondisability on the basis of new evidence, a June 2014 psychological exam.  (#24 at 16-25).  Defendant responds that the ALJ properly assessed the severity of plaintiff's medical impairments and obesity (#29 at 2-3), and correctly evaluated the medical opinion evidence.  (#29 at 4-9).  Defendant also dismisses the relevance of plaintiff's June 2014 psychological evaluation.  (#29 at 9-12).

## II.  STANDARD OF REVIEW

The burden of proving disability in a claim for SSDI benefits and SSI payments rests upon the claimant.  20 C.F.R. §§ 404.1512(a), 416.912(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying SSDI and SSI claims after the plaintiff has exhausted administrative remedies.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682

F.3d 1157, 1161-62 (9th Cir. 2012).  The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record.  *Gutierrez v. Comm'r of Soc. Sec. Admin*, 740 F.3d 519, 522 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).  The ALJ need not discuss every piece of evidence in the record, but she cannot ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).  The ALJ's discussion must adequately explain her decision in light of the evidence, for "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence,]" *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006), and the court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision.  *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)).  The ALJ alone is responsible for determining credibility and resolving ambiguities.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Further, where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

## III.  DISCUSSION

**A.     Plaintiff's motion for default judgment lacks merit.**

As a preliminary matter, the court recommends that plaintiff's motion for default judgment (#25) be denied.  Plaintiff argues that defendant failed to timely respond to his motion for remand, and therefore consented to it.  (#25 at 2).  Defendant responds that the scheduling order permitted thirty days to file the opposition and cross-motion, and thus the filings were not due until August 27, 2014.  (#26 at 1).  The court agrees with defendant.

Under Local Rule IB 7-2(d), a non-moving party's non-response is deemed consent to the moving party's motion.  Although plaintiff correctly understands the Rule, he errs as to the applicable dates.  Specifically, plaintiff points to the August 14, 2014 filing deadline listed in CM/ECF's docket report.  (#27 at 1-2).  The court acknowledges that this (incorrect) date appears in CM/ECF, but it is the court's scheduling order (#16) and not CM/ECF that establishes the deadline for defendant's cross-motion.  As the scheduling order afforded defendant thirty days from plaintiff's July 28, 2014 filing (#16 at 3), defendant's August 25, 2014 reply and cross-motion were timely filed.  The court therefore recommends that plaintiff's motion for default judgment (#25) be denied.

**B.     SSDI and SSI claims are evaluated under a five-step sequential process.**

The Commissioner of Social Security follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI and SSI.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  The Commissioner ends the process if, at any step, she finds disability or nondisability.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "The burden of proof is on the

claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* §§ 404.1520(b), 416.920(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment or combination of impairments is "severe." *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof. *Id.* §§ 404.1520(c), 416.920(c).

In step three, the ALJ compares the claimant's severe impairments to the Agency's impairment list. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is contained on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is presumed disabled. *Id.* §§ 404.1520(d), 416.920(d).

If the Commissioner does not find disability at step three, however, review of the claim proceeds to the fourth step: whether the claimant, despite his severe impairments, can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant is not disabled where he can engage in such work. *Id.* §§ 404.1520(e), 416.920(e). If the claimant cannot perform past relevant work, but the Commissioner demonstrates that the claimant is able to perform other kinds of work, the claimant is again found not disabled. *Id.* §§ 404.1520(f), 416.920(f). The ALJ will find the claimant can return to work if he can perform the "actual functional demands and job duties of a

particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).   The ALJ makes this determination in light of the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed.  20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  In short, RFC is what the claimant can still do despite his limitations.  20 C.F.R. §§ 404.1545, 416.945.

When evaluating a claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. §§ 404.1545(a), 416.945(a).  However, the ALJ is not required to believe every allegation the claimant offers regarding his limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  The ALJ must follow a two-part inquiry where the plaintiff alleges the disability results from excessive limitations or pain.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that reasonably can be expected to produce the alleged symptoms.  *Lingenfelter*, 504 F.3d at 1036. Second, where no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so.  *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ must cite to the record and discuss specific evidence therein.  *See Vasquez v. Astrue*, 572 F.3d 586,

591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding).  The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in [her] credibility analysis.").  Medical opinions are also probative evidence when determining credibility of subjective complaints.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins*, 261 F.3d at 857.

The burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy.  20 C.F.R. §§ 404.1560(c), 416.960(c).  If the claimant cannot do the work he did in the past, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work.  *Yuckert*, 482 U.S. at 141-42.  The ALJ may meet this burden either through the testimony of a vocational expert or by reference to "the Grids."  *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).  Under either method, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform.  42 U.S.C. §

423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC allows his performance of other occupations, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, the claimant is disabled. *Id*. §§ 404.1520(g), 416.920(g).

**C.     The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for SSDI benefits and SSI payments, the ALJ followed the five-step process described above. (AR 18-19). In step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 8, 2009. (AR 19). At step two, the ALJ found that plaintiff experiences three severe impairments that significantly limit his ability to perform basic workplace activities: degenerative disc disease, chronic back and bilateral shoulder pain, and obesity. (AR 19). In contrast, the ALJ concluded that plaintiff's other medical conditions, namely, diabetes, hypertension, hyperlipidemia, and gastroesophageal reflux disease, did not individually or collectively constitute severe impairments. (AR 19).

In step three, the ALJ found that none of plaintiff's severe impairments equaled the severity of a listed impairment. (AR 20). As required by the regulations, the ALJ first compared plaintiff's severe impairments, including obesity, to the listed impairments, and next evaluated each in light of the criteria for such impairments to determine whether any of plaintiff's impairments were medically equivalent to the listed impairments. (AR 20); *see also* Social Security Ruling ("SSR") 02-1p, 67 Fed. Reg. 57859-64 (Sept. 12, 2002).

The ALJ proceeded to step four and made several findings. First, the ALJ found that plaintiff's severe impairments could cause the symptoms he alleged, but that his allegations were not credible as to the extent of the limitations. (AR 20). In so concluding, the ALJ assessed the medical opinion evidence in the record, and assigned great weight to the opinion of Dr. Richard Gasparre, a

consultative examining provider, and little weight to plaintiff's treating physician, Dr. Robert Rand. (AR 21-24).   Second, the ALJ found that plaintiff's RFC permitted "medium work."   (AR 20). Third, the ALJ determined that plaintiff's RFC allowed him to perform past relevant work as an appliance repairman and painter helper.  (AR 24).

Finally, as an alternative finding at step five, the ALJ found that plaintiff could perform other jobs available in the national economy.  (AR 24-25).  Because the ALJ found that plaintiff's RFC permitted medium work without additional limitations, she relied on the Medical-Vocational Rules, which directed a finding of nondisability without specific testimony by a vocational expert as to the availability of particular jobs in the region or several regions of the country.  (*See* AR 25).  Because the ALJ determined that the record supported a finding of nondisability in the period of September 8, 2009 to February 16, 2012, she denied plaintiff's claims for benefits.  (AR 25).

**D.     The ALJ properly considered plaintiff's obesity at step two of the sequential process.**

In her step two determination, the ALJ concluded that plaintiff's obesity was a severe impairment because it significantly limits his ability to complete workplace tasks.   (AR 19). Plaintiff apparently interprets the ALJ's use of the terms "obese" and "obesity" in the written decision as evidence of personal bias against him.  (*See* #24 at 2).  In short, it appears that plaintiff misunderstands the ALJ's discussion.

The ALJ is required to consider every impairment at step two, including obesity.  *See* SSR 02-1p.  Rather than a personal attack upon plaintiff, the ALJ's consideration and discussion of this condition was for the purpose of assessing whether plaintiff was disabled and, therefore, eligible for benefits.  Although plaintiff asserts that the ALJ's use of these terms evidences her bias against him, the court finds that the written decision provides insufficient basis to rebut the presumption that she

was unbiased.  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  Accordingly, the ALJ's

consideration and discussion of obesity was not in error.

**E.     The ALJ's step-two determination that only some of plaintiff's impairments were severe was not contradictory.**

Plaintiff next contends that the ALJ erred, again at step two, by deeming "severe" his

degenerative disc disease, chronic back and bilateral shoulder pain, and obesity, while also

determining that his diabetes, hypertension, hyperlipidemia, and gastroesophageal reflux disease

were not severe.  (#24 at 3).  Plaintiff's argument fails.

The step-two severity requirement is a screening device by which the ALJ can early reject

meritless claims for benefits that are predicated on conditions that are not significantly limiting.  *See*

*Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005).  Described simply, the severity inquiry

asks which medical impairments, alone or in combination, are so serious that they could produce

disability.  It thereby excludes from consideration those impairments that have "no more than a

minimal effect on an individual's ability to work."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273,

1290 (9th Cir. 1996)).  Accordingly, it is not a determination about the ultimate disability question,

and the ALJ's findings are not contradictory when she deems some impairments severe, but others

not.

The ALJ thus made no legal error in finding that plaintiff's diabetes, hypertension,

hyperlipidemia, and gastroesophageal reflux disease were not severe impairments.  She supported

this conclusion by evaluating the medical evidence, finding therein "no evidence [that] these

impairments individually or in combination interfere significantly with the claimant's ability to

work."  (AR 19, 20-24).  The court is satisfied that substantial evidence supports the ALJ's step-two

determination.

**F.    The ALJ permissibly afforded greater weight to Dr. Gasparre's opinion, and her corresponding RFC determination was based on substantial evidence.**

Plaintiff next challenges the ALJ's step-four evaluation of the medical opinion evidence.  In concluding that claimant's RFC permitted medium work, the ALJ discredited plaintiff's symptom allegations because of a lack of medical evidence, inconsistency of plaintiff's complaints, and plaintiff's daily activities.  Plaintiff contends that the ALJ erred by emphasizing Dr. Gasparre's opinion and discounting the conclusions of his treating physician, Dr. Rand, who generally opined that plaintiff is severely limited.  (#24 at 9).  The court concludes that the ALJ did not err in her relative weighting of the opinion records, and she discredited the plaintiff's allegations with clear and convincing reasons.  In addition, the RFC determination was based upon substantial evidence.

An ALJ may encounter three types of medical opinions in the administrative record: treating, examining, and nonexamining.  Each type receives different weight in the ALJ's review.  *Garrison*, 759 F.3d at 1012.  Generally, opinions from examining providers receive greater weight than those from nonexamining providers, and among examining providers, the ALJ is to accord greatest weight to the treating physician.  *Id.*  Opinions of treating physicians are particularly persuasive because the continuity of care enhances their abilities to fully and accurately assess the claimant's medical problems.  *Embrey v. Bowen*, 949 F.2d 418, 421-22 (9th Cir. 1988).

This is not to say, however, that the ALJ is bound by the conclusions of any particular medical provider.  Although the ALJ must articulate "clear and convincing" reasons for disregarding a treating physician's uncontradicted opinion, *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008), she may reject the treating opinion as long as she states specific and legitimate reasons that have support of substantial evidence.  *Garrison*, 759 F.3d at 1012.  An ALJ provides specific and legitimate reasons by providing a detailed and thorough summary of facts and conflicting medical evidence, stating her interpretation thereof, and making findings.  *Id.*  Only when

the ALJ fails to sufficiently explain why her conclusions are correct will the contradicted opinion of the claimant's doctor control.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

In supporting a decision to accept certain medical opinions over others, the ALJ may cite contradiction, inconsistency with the evidence, and consistency of the accepted opinions with the administrative record as a whole.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  In particular, a treating physician's opinion may be rejected when the treatment notes "provide no basis for the functional restrictions [the physician] opined should be imposed . . . ."  *Connett*, 340 F.3d at 875.

In this case, the ALJ considered the conflicting opinions of Dr. Gasparre and Dr. Rand, and based her decision to accord greater weight to Dr. Gasparre on proper legal standards and substantial evidence.  As the ALJ noted, Dr. Gasparre based his findings on "expert review of the claimant's medical history and his thorough physical examination of the plaintiff."  (AR 21).  Dr. Gasparre explained that plaintiff's medical history established on-going back and neck pain (AR 242), and he specifically found that plaintiff has "[d]egenerative disc disease of the cervical, thoracic, and lumbar spine resulting in chronic back pain."  (AR 244).  During the physical exam, however, Dr. Gasparre observed only slight to moderate pain in plaintiff's neck, thoracic, and lumbar regions during certain rotation and maneuvering exercises.  (AR 243).  On those bases, Dr. Gasparre opined that plaintiff was moderately limited in his abilities to lift/carry, stand and walk, sit, climb, balance, stoop, kneel, crouch, and crawl.  (AR 240-41; *see also* AR 21).

The ALJ expressly found that Dr. Gasparre's conclusions were consistent with the record as a whole.  As she summated, plaintiff's medical files—largely treatment notes from Dr. Rand's office and MRI impressions—indicated "[n]o spinal instability, abnormal gait, . . . evidence of radicular

pain in the legs[,]" "significant pathology affecting the spinal canal or cord[,]" or "impingement of the spinal cords or nerves."  (AR 22; *see also* AR 193-207).  Remarkably, Dr. Richard Welcome, a radiologist, found that the degree of degeneration to plaintiff's vertebrae ranged from "very minimal" to "moderate."  (AR 200-01).

Further, plaintiff's pain has been somewhat inconsistent.  He complained about back pain during certain medical visits, but indicated no pain during others.  (AR 22; *compare* AR 193-94, 199, 272, 273, 304, 320 *with* AR 307, 317, 323, 328, 341, 353, 355, 359, 372).  Similarly, despite his 1998 rotator cuff surgery on his left shoulder, plaintiff has complained of shoulder pain only on occasion, and he indicated to Dr. Gasparre that he no longer experiences left shoulder difficulties. (AR 21-22).  Citing the treatment notes, the ALJ observed that "there are no significant medical records showing any worsening [of] the claimant's back, neck, or shoulders [from June 2011 to February 2012], except for a complaint of back pain in December 2011."  (AR 22-23).  The notes to which the ALJ cited suggest that plaintiff's pain improved with certain combinations of medication (AR 352), and he notably reported lower pain levels during many medical visits (AR 353, 355, 359 (plaintiff's "pain is reasonably well controlled"), 372 (noting a pain level of 5/10 and activity level of 7/10 in November 2011)).  Accordingly, the ALJ concluded that plaintiff's "subjective pain complaints have been sporadic from his September 2009 alleged onset date to present" (AR 23), and such inconsistency provided basis for accepting Dr. Gasparre's conclusions.  (AR 21-22).  In the court's view, the ALJ's assessment is supported by substantial evidence, and her discussion provides specific, legitimate reasons for accepting Dr. Gasparre's opinion. *Garrison*, 759 F.3d at 1012.

The ALJ rested her rejection of Dr. Rand's conclusion upon the same evidence.  She contrasted Dr. Rand's findings of "severe restrictions" on plaintiff's ability to work with the treatment notes.  (AR 23; *see also* AR 379-81).  In particular, she pointed to plaintiff's normal

physical exams during this time period.  (AR 23; *see, e.g.*, AR 347, 352, 353, 355). As the ALJ explained, Dr. Rand never indicated that plaintiff, despite his sporadic pain complaints, "has trouble walking, sitting, standing, or lifting/carrying light or medium weight objects."  (AR 23).  The treatment notes support this conclusion.  (*See, e.g.*, AR 317 ("Gait is WNL [within normal limits]"), 323 ("gait is normal"), 328 ("motor is 5/5 proximally and distally of bilateral lower extremities")). In fact, only two physical exam treatment notes suggest any degree of physical limitation.  First, plaintiff complained in August 2010 of shoulder pain and a "popping" sensation due to an apparent dislocation in March of that year. (AR 270).  Second, in June 2011, Dr. Rand noted that plaintiff's left shoulder had a limited range of motion due to pain.  (AR 347).  Yet other treatment notes evince no such limitations, and Dr. Gasparre found in April 2010 that plaintiff's range of motion in the left shoulder was normal.  (AR 243).  As Dr. Rand did not perform physical examinations of the plaintiff during visits in late 2011, no evidence could reasonably suggest to the ALJ that plaintiff's physical conditions had deteriorated to a point where her conclusions would measurably differ.  (*See* AR 359, 372).

The court concludes that substantial evidence supported the ALJ's decision to discount Dr. Rand's opinion.  Lack of support in the treatment notes is a permissible reason on which to base this decision.  *Connett*, 340 F.3d at 875.  Because her resolution and explanation of the competing opinions was legally sufficient, reliance on Dr. Gasparre's opinion in the RFC determination satisfies the substantial evidence standard.  *See Orn*, 495 F.3d at 632 (holding as substantial evidence the independent findings of an examining physician, even where they differ from the findings of the treating physician).

In addition, the ALJ supported her underlying decision to discount plaintiff's allegations of severe limitations on the basis of his daily activities.  (AR 23).  She noted that his claim of severe

limitations did not comport with his care for his parents and grandchildren, and also his ability to drive, shop, do laundry, and make meals.  (AR 23).  The ALJ's reliance on this conflict and the lack of medical evidence are both permissible bases for discrediting limitations assertions.  *Orn*, 495 F.3d at 636; *Burch*, 400 F.3d at 681.  Thus, the ALJ satisfied her burden of articulating clear and convincing reasons. *Ryan*, 528 F.3d at 1198.  As these reasons have support in the administrative record, the court is satisfied that the ALJ's decision is based on substantial evidence and should not be reversed or remanded.

**G.     The court cannot consider the psychological report because it is not part of the record, and remand is not warranted because the exam is immaterial to plaintiff's present SSDI and SSI claims.**

Finally, plaintiff emphasizes the opinion of Dr. Kimberly Bell, a psychologist plaintiff visited in June 2014, who states that "[i]t is difficult to imagine him being able to sustain a job at this point in time." (#24 at 20).  Plaintiff introduces Dr. Bell's report for the first time as an attachment to his motion.   (*See* #24 at 16-25).  Accordingly, the court liberally construes plaintiff's argument as a motion for remand on the basis of new evidence.  *See Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (construing liberally the claims of a *pro se* plaintiff).  Because the report is not material to plaintiff's claims, however, remand for the consideration of new evidence is not warranted.

The court may recommend remand for consideration of new evidence, such as the medical opinion of a new physician, but remand is proper only where the evidence is material.  42 U.S.C. § 405(g).  Evidence is material only where it "directly" concerns the issues before the ALJ and presents a reasonably possible basis for changing the outcome.  *Mayes*, 276 F.3d at 462.

The court is unpersuaded that Dr. Bell's report is material to plaintiff's claims for benefits.  It is certainly possible that Dr. Bell's opinion about plaintiff's mental health is correct, and that as of today, he is significantly more limited in his ability to work than he was during the pendency of his

claims.  Nevertheless, Dr. Bell's opinion has no bearing on the ALJ's determination that plaintiff's physical impairments were not disabling between September 8, 2009 and February 16, 2012. Plaintiff claimed disability in his SSDI and SSI applications due to physical impairments (*See* AR 21, 154), and his psychological consultation on April 30, 2010 suggested no mental impairments. (AR 245-47).  Accordingly, the issue before the ALJ was the extent that plaintiff's degenerative disc disease, chronic back and bilateral shoulder pain, and obesity were disabling.  (*See* AR 19-24).  Any new evidence that merits a remand thus must relate to one of these impairments.  *See Mayes*, 276 F.3d at 462-63.  Further, accompanying Dr. Bell's belief that plaintiff was unable to work as of June 2014 was the specific qualification that she was not "comment[ing] on his physical limitations because that is not the context [in which she evaluated him.]"  (#24 at 20).  As Dr. Bell's opinion does not speak in any manner to the issues before the ALJ, remand is not warranted for consideration of the report.

The court reminds plaintiff, however, that he is able to submit new applications for benefits if he believes that deterioration in his mental health or other conditions presently prevent him from working.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 n.1 (9th Cir. 2001).  Although Dr. Bell's conclusion as to his ability to work will not bind the agency to reach that determination, *see* 20 C.F.R. §§ 404.1527(d)(1); *see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010), Dr. Bell's opinion, if introduced into the record, may support his position.

## IV.  CONCLUSION

The court concludes that substantial evidence in the record supported the ALJ's determination of nondisability, and that the ALJ relied on proper legal standards in evaluating plaintiff's impairments and determining his RFC.  Further, the report of Dr. Bell is not properly before the court and does not provide basis for remand.  As plaintiff's motions for default judgment

and remand or reversal lack merit, the court recommends that plaintiff's motion for default judgment (#25) and remand or reversal (#24) be denied, and that defendant's cross-motion to affirm (#28) be granted.

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for default judgment (#25) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for remand and/or reversal (#24) be **DENIED** and defendant's cross-motion to affirm (#28) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.


**DATED:**  October 29, 2014.

_____

**UNITED STATES MAGISTRATE JUDGE**